**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| SARAH KATHRYN CROTTS, AN INCAPACITATED ADULT, WHO SUES BY AND THROUGH MARGIE STANLEY CROTTS, HER MOTHER, GUARDIAN AND NEXT FRIEND, <br><br> Plaintiff, <br><br> v. <br><br> PFIZER, INC., PHARMACIA LLC f/k/a PHARMACIA CORPORATION, PARKE, DAVIS & COMPANY LLC as successor-in-interest of PARKE, DAVIS & COMPANY, AND WARNER-LAMBERT COMPANY LLC f/k/a WARNER-LAMBERT COMPANY, <br><br> Defendants. | No. 7:20-cv-00601-TTC |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**

Defendants Pfizer Inc.; Pharmacia, LLC (f/k/a Pharmacia Corporation); Parke, Davis & Company LLC, as successor-in-interest of Parke, Davis & Company; and Warner-Lambert Company LLC f/k/a Warner-Lambert Company ("Defendants") hereby move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim, or in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e).

**INTRODUCTION**

This litigation involves claims by Plaintiff Sarah Crotts, suing by and through her mother, Margie Crotts, arising out of her alleged use of Dilantin® (phenytoin), a life-saving anti-epileptic prescription medication. Allegations specific to Ms. Crotts are sparse in the Complaint—she does not, for example, state when she began and stopped using the medication, allege when her alleged injuries began or were diagnosed, or specify whether the "Dilantin" she was prescribed and ingested

1

was Defendants' brand-name product or a competitor's generic version—but Plaintiff alleges that she developed neurological injuries, including cerebellar atrophy, as a result of using Defendants' Dilantin and/or other companies' generic phenytoin. Plaintiff's claims appear to center on her allegation that the Dilantin label should have referenced "cerebellar atrophy" specifically before December 2015, even though the label undisputedly long-before warned of severe neurological symptoms, including (among other things) "irreversible cerebellar dysfunction."

The Court should dismiss Plaintiff Crotts's warnings-based claims (Counts I–IV) because she cannot prove causation in light of the fact that she continued on the medicine after the December 2015 label change. Otherwise the Court should require her to provide a more definite statement about when she began and ended her medication use. Plaintiff's conspiracy claim (Count IV) should also be dismissed for failure to state a claim upon which relief can be granted, as it is barred by the intracorporate-conspiracy doctrine. In addition, Plaintiff's fraud claim (Count I) is insufficiently particularized under Federal Rule of Civil Procedure 9(b) and should likewise be dismissed. In the same vein, the entire Complaint is subject to dismissal as an impermissible shotgun pleading; alternatively, Plaintiff should be required to provide a more definite statement of her claims.

## BACKGROUND AND PROCEDURAL HISTORY

**I.      Epilepsy, its treatment, and cerebellar atrophy**

1. Dilantin/phenytoin is part of the "first-generation" of anticonvulsants (Doc. 1 ¶ 57), and has been FDA approved to treat epilepsy since 1953.[1] Epilepsy is a neurological disorder

---

[1] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=008762. The contents of the FDA's website are subject to judicial notice, *see Ali v. Allergan USA, Inc.*, No. 1:12–CV–115 (GBL/TRJ), 2012 WL 3692396, at *1 (E.D. Va. Aug. 23, 2012) (taking judicial notice of documents issued by the FDA), and courts can take judicial notice of public records at the motion to dismiss stage without converting the motion into one for summary judgment, *see Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 506–07 (4th Cir. 2015).

marked by sudden recurrent episodes of sensory disturbance, loss of consciousness, or convulsions, associated with abnormal electrical activity in the brain.  The risks associated with epilepsy can vary from being very minor (*e.g.*, bruises) to serious and even life-threatening (*e.g.*, serious head injuries).[2]

2. Cerebellar atrophy and cerebellar dysfunction are risks associated with, among other things, both epilepsy and certain medications used to treat the condition, including Dilantin/phenytoin.  *Cerebellar atrophy* is the process in which neurons in the cerebellum (the area of the brain that controls coordination, balance, speech, vision, cognitive functions and emotions) deteriorate and lead to shrinking of the cerebellum.  Cerebellar atrophy is generally diagnosed radiographically, through magnetic resonance imaging (MRI) of the brain.  *Cerebellar dysfunction* is the abnormality or impairment in the function of the cerebellum and includes a host of clinical symptoms, such as ataxia (incoordination of gait characterized by exaggerated movements); decomposition of movement and dysmetria (inability to control range of movement); and nystagmus (involuntary eye movements).  Cerebellar dysfunction may or may not be related to cerebellar atrophy—in other words, a patient may have cerebellar atrophy without cerebellar dysfunction, and vice versa.[3]

3. Since its early days of approval, the FDA-approved Dilantin label has warned not only of "irreversible cerebellar dysfunction" but also of specific cerebellar-dysfunction symptoms that patients may experience, particularly at higher phenytoin levels.  For example, the label explains that "[t]he most common manifestations encountered with phenytoin therapy are referable" to the

---

[2] *The Epilepsies and Seizures: Hope through Research*, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Hope-Through-Research/Epilepsies-and-Seizures-Hope-Through#3109_2.

[3] *Cerebellar degeneration*, National Center for Advancing Translational Sciences, https://rarediseases.info.nih.gov/diseases/6019/cerebellar-degeneration.

nervous system and "include nystagmus, ataxia, slurred speech, decreased coordination, somnolence, and mental confusion." The label also explains that "[s]erum levels of phenytoin sustained above the optimal range may produce confusional states referred to as 'delirium,' 'psychosis,' or 'encephalopathy,' or rarely irreversible cerebellar dysfunction," that the "initial symptoms" of an overdose "are nystagmus, ataxia, and dysarthria," and that "[i]rreversible cerebellar dysfunction has been reported."[4]

4. As Plaintiff's Complaint notes, Pfizer added the words "cerebellar atrophy" to the Dilantin label in December 2015. *See* Doc. 1 ¶¶ 9–10, 23, 31; *see also, e.g.*, Dec. 2015 Dilantin Label (adding language to Precautions, Adverse Reactions, and Overdosage sections, that "[s]erum levels of phenytoin sustained above the optimal range may produce confusional states referred to as 'delirium,' 'psychosis,' or 'encephalopathy,' or rarely irreversible cerebellar dysfunction *and/or cerebellar atrophy*," that "*[c]erebellar atrophy has been reported, and appears more likely in settings of elevated phenytoin levels and/or long-term phenytoin use*," and that "[i]rreversible cerebellar dysfunction *and atrophy* have been reported" (added language italicized)).[5]

## II. Plaintiff's Claims

5. Plaintiff Crotts initially filed suit in New York state court as a part of a multi-plaintiff complaint, captioned *Monacelli v. Pfizer*, No. EFCV-19-156675 (N.Y. Sup. Ct. October 2, 2019). This complaint was coordinated with the complaints of other plaintiffs, represented by the same plaintiffs' attorney, who had filed suit alleging physical injuries from using Dilantin/phenytoin, after

---

[4] *E.g.*, Dec. 2011 Dilantin Label, https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/008762s032s039s040s041s043lbl.pdf; Mar. 2013 Dilantin Label, https://www.accessdata.fda.gov/drugsatfda_docs/label/2013/008762s047lbl.pdf. *See Ali*, 2012 WL 3692396, at *1; *Goldfarb*, 791 F.3d at 506–07.

[5] https://www.accessdata.fda.gov/drugsatfda_docs/label/2016/008762s055,010151s042lbl.pdf.

4

the New York State Litigation Coordinating Panel established *In re Dilantin Litigation*, Index No. 784000/2019 (N.Y. Sup. Ct.), on June 26, 2019.

6. The parties agreed to a Plaintiff Fact Sheet, in which the plaintiffs provided some initial, agreed-upon background information about their claims, including where they reside, where they received medical treatment, and their dates of use of Dilantin and/or phenytoin. Plaintiff Crotts completed and served on Defendants a Plaintiff Fact Sheet as part of that process.

7. Based on the information in the Plaintiff Fact Sheets, in January 2020, Defendants moved to dismiss on *forum non conveniens* grounds the claims of all the out-of-state-resident plaintiffs in the New York coordinated proceeding, and the New York state court granted that motion on August 5, 2020. The order gave the plaintiffs 90 days to refile in their home states and required Defendants to accept service of any refiled complaint by email. The parties did not take any case-specific discovery while Plaintiff's case was pending in the New York coordinated proceeding, aside from the collection of some medical records.

8. Plaintiff's Complaint in this action provides few details about her specific claims, but she alleges that she was prescribed and used Dilantin and that the medicine caused her to develop certain neurological injuries (namely, cerebellar atrophy). *See* Doc. 1 ¶ 14. Although Plaintiff alleges that "[t]his is a product liability action" (*id.* at 1), she has not pleaded traditional product-liability causes of action. Instead, she has pleaded four other theories of recovery: "fraud, fraudulent concealment and intentional misrepresentation" (*id.* ¶¶ 109–22); "breach of implied warranties of merchantability and fitness for a particular purpose" (*id.* ¶¶ 123–35); "breach of express warranty" (*id.* ¶¶ 136–39); and "alter ego, corporate liability and civil conspiracy" (*id.* ¶¶ 140–45). She has also pleaded an alleged theory of "equitable tolling of [Virginia's] statute of limitations" (*id.* ¶¶ 105–08), even though Virginia law explicitly has no "discovery rule," *see* VA. CODE ANN.

5

§ 8.01-230 ("[T]he prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person . . . and not when the resulting damage is discovered . . ."); *Adams v. Am. Optical Corp.*, No. 19-1609, 2020 WL 6533463 (4th Cir. Nov. 6, 2020).

9. Ms. Crotts is 29-years old and "was prescribed and ingested Dilantin for more than a decade." Doc. 1 ¶ 14. She alleges that "[a]s a result of her ingestion of Dilantin, [she] suffers from severe and irreversible cerebellar atrophy." *Id.* Ms. Crotts provides no further information about her Dilantin use or alleged injuries—including when she began taking and if/when she stopped taking Dilantin, or the date of onset of her alleged injuries or cerebellar atrophy diagnosis.

### LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]hen considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). "[A] court can properly dismiss a complaint on a Rule 12(b)(6) motion . . . when 'the face of the complaint clearly reveals the existence of a meritorious affirmative defense.'" *Chisholm v. T.J.X. Cos.*, 286 F. Supp. 2d 736, 739 (E.D. VA. 2003) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alterations omitted) (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Put differently, "the pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "Thus, a motion under Rule 12(e), while not a substitute for discovery, is appropriate when a lack of adequate notice of the claims leaves defendant unable to formulate a response that both answers the allegations and asserts appropriate affirmative defenses." *Moore v. Matthews*, No. 4:12-cv-00015-JLK, 2012 WL 12549868, at *1 (W.D. Va. Aug. 31, 2012) (citing *The Collection, LLC v. Valley Bank*, No. 4:09CV00007, 2009 WL 2357145 (W.D. Va. July 31, 2009)).

## ARGUMENT

**I.     Plaintiff Crotts's warnings-based claims are due to be dismissed; in the alternative, the Court should order Plaintiff to provide a more definite statement of the dates when she ingested Dilantin/phenytoin.**

Plaintiff Crotts's failure-to-warn claims should be dismissed.[6]  However Plaintiff has labeled her claims, this is a product liability case in which Plaintiff alleges that she experienced personal injuries arising from an allegedly inadequate warning in the FDA-approved Dilantin label. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 826 F. Supp. 155, 161 n.7 (E.D. Va. 1993) (noting that courts must "look beyond the labels" in a plaintiff's complaint to see what really "form[s] the basis of the claim" (quotation omitted)).  Under Virginia law, for product-liability claims regarding use of a prescription medicine—including warranty claims—that are based on an

---

[6] All of Plaintiff's claims—however pleaded—rely on a failure to warn. *See, e.g.*, Doc. 1 ¶¶ 109–22 (citing failure to warn as factor in fraud, fraudulent concealment, and intentional misrepresentation claims); ¶¶ 123–35, 136–39 (relying on inadequate warning as basis of breach of express and implied warranties), ¶¶ 140–45 (alleging a conspiracy "to sell Dilantin without adequate warnings to prescribing physicians and patients").

7

alleged failure to warn, the learned-intermediary doctrine applies. *Higgins v. Forest Labs.*, 48 F. Supp. 3d 878, 883–84 (W.D. VA. 2014) (quotation omitted) ("Generally, a manufacturer has a duty to warn its customers of risks posed by its products."). Likewise, product-liability-based fraud claims premised on an alleged failure to warn are also subject to dismissal if the learned-intermediary doctrine applies. *See, e.g.*, *Talley v. Danek Med., Inc.*, 179 F.3d 154, 162–63 (4th Cir. 1999) (applying Virginia law).

"The learned intermediary doctrine provides an exception to the general rule imposing a duty on manufacturers to warn consumers about the risks of their products." *Id.* at 162. "For products requiring prescription or application by physicians, the doctrine holds that a manufacturer need only warn doctors and not consumers." *Id.* So, in order to prevail on her warnings-based claims, Plaintiff Crotts must establish "not only . . . that [the] manufacturer's warning was inadequate, but that such inadequacy *affected the prescribing physician's use of the product* and thereby injured" her. *Higgins*, 48 F. Supp. 3d at 884 (emphasis added) (internal quotation marks and citation omitted).

Plaintiff alleges that "cerebellar atrophy" was first added to the Dilantin label in December 2015. *See* Doc. 1 ¶¶ 9–10, 23, 31. That date is important because, although Ms. Crotts vaguely alleges only that she "was prescribed and ingested Dilantin for more than a decade" (*id.* ¶ 14), Defendants have reason to believe, based on the sworn plaintiff fact sheet that Plaintiff's representative signed under penalty of perjury in the New York proceeding, that she used Dilantin/phenytoin from 2004–2018.[7] These facts show that Ms. Crotts's prescribing physician necessarily would not have altered his prescribing behavior if the words "cerebellar atrophy" had

---

[7] "[I]n consideration of a motion to dismiss, a court may take judicial notice of matters of public record such as court filings or records without so converting the motion." *Anderson v. Bolster*, No. 1:19cv75 (LO/TCB), 2020 WL 5097516, at *3 (E.D. Va. Aug. 27, 2020) (citation omitted).

been included in the Dilantin label, because her physician in fact *continued to prescribe the medication after that addition to the label in 2015*. *Cf. Higgins*, 48 F. Supp. 3d at 884. Only a plaintiff who both used and discontinued use of Dilantin before December 2015 can "possibly allege" a valid claim that the label was inadequate because it did not reference cerebellar atrophy. *See In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789(JFK), 2013 WL 6669706, at *4 (S.D.N.Y. Dec. 18, 2013).

It will be no response for Plaintiff to say that the label remains inadequate even after the label change. *See* Doc. 1 ¶ 13 ("To this day, Defendants still fail to provide sufficient information regarding the risks of cerebellar atrophy to United States physicians and consumers of Dilantin."). Instead, federal law preempts any claim that the Dilantin label remained inadequate after the December 2015 label change because Plaintiff does not allege that Defendants could have thereafter unilaterally changed the label using the FDA's Changes Being Effected (CBE) regulation. Put differently, to plead a viable failure-to-warn claim, "a plaintiff must plead a labeling deficiency that Defendants could have corrected using the CBE regulation." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019) (alteration adopted) (internal quotation marks and citation omitted). A plaintiff who fails to allege the existence of "newly acquired information," such that the defendant could have unilaterally changed a prescription-drug label from the CBE process, has not stated a plausible failure-to-warn claim. *See, e.g.*, *id.* (affirming dismissal of failure-to-warn claims that "consist[ed] of 'conclusory and vague' allegations and [that] d[id] not plausibly allege the existence of newly acquired information that could have justified Defendants' revising the [product] label through the CBE regulation"); *Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 816 (7th Cir. 2018) (holding that defendant "lacked newly acquired information" that would support a label change); *In re Celexa & Lexapro Mktg. & Sales*

9

*Pracs. Litig.*, 779 F.3d 34, 41–42 (1st Cir. 2015) ("The CBE procedure is only available to make changes that, among other things, are based on 'newly acquired information.'" (quotation omitted)). Accordingly, in cases involving prescription medications, federal law preempts failure-to-warn claims "ar[ising] after the [product's] label change" if the plaintiff does not plausibly allege the existence of newly acquired information that post-dates that label change. *See Gayle v. Pfizer Inc.*, 452 F. Supp. 3d 78, 87–88 (S.D.N.Y. 2020). That is the case here—Plaintiff points to no newly acquired information post-dating Dilantin's 2015 label change that would have justified a change to the Dilantin label.

Plaintiff's claims for alleged failure to warn fail as a matter of law for lack of proximate cause in light of her continued use of the medicine after the Dilantin 2015 label change (and federal law preempts any claim that the label was inadequate after the 2015 label change). Plaintiff has made sworn statements that she used Dilantin until 2018, and the Court should take judicial notice of that fact in light of the vague, bare-bones allegations in Plaintiff's Complaint. The Court should dismiss the Complaint with prejudice.

\* \* \*

At the least, the Court should order Plaintiff to allege the dates of her Dilantin/phenytoin use. This "minor amendment" will materially advance this litigation and does not impose an "unreasonable burden" on Plaintiff. *Id.* The "period of ingestion" is critical to the threshold question of whether Plaintiff even has a claim regarding an allegedly inadequate Dilantin label. *Id.* Rule 12(e) states that a court may require "a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response," where the defendant "point[s] out the defects complained of and the details desired." *Id.* A more definite statement is appropriate "when a specific date could

10

support a dispositive defense motion." *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010); *accord, e.g.*, *Williams v. City of New Rochelle*, No. 13–CV–3315 NSR, 2014 WL 2445768, at *2 (S.D.N.Y. May 29, 2014) ("[W]here the movant shows that there actually is a substantial threshold question that may be dispositive, such as a critical date, a more definite statement may be warranted." (citation and internal quotation marks omitted)).

As to any possible theory that Defendants failed to warn, the Complaint is otherwise "so vague or ambiguous" as to prejudice Defendants in trying to answer it. *See* Fed. R. Civ. P. 12(e). Plaintiff's Complaint stretches across 145 paragraphs—it discusses the alleged risks to certain patient populations (several of which, like "pregnant women" and "infants," have no clear connection to Plaintiff) and describes multiple manufacturers of various phenytoin-containing products since 1939. But *only one* of these paragraphs relates to Plaintiff and her personal connection to the alleged claims. And in that one paragraph, Plaintiff includes no specific information about the *timing and duration* of her alleged Dilantin/phenytoin use or her alleged injuries—Plaintiff alleges only that she "was prescribed and ingested Dilantin for more than a decade." Doc. 1 ¶ 14.

Where the duration of product use is relevant to whether a product-liability claim has been adequately alleged, courts have ordered more definite statements. In *Fosamax*, for example, the MDL court required the plaintiffs to "amend their pleadings to clarify when they took" the manufacturer's medication. 2013 WL 6669706, at *4. The court explained that this "minor amendment [was] appropriate" because "only those Plaintiffs who took [the product] during [a certain] window [of time]" could "possibly allege" a valid claim that the manufacturer had failed to update its label. *Id.* In that case, "the period of ingestion by each plaintiff constitute[d] a substantial threshold question that may be dispositive" and "requiring Plaintiffs to plead when they

11

took [the product] d[id] not impose an unreasonable burden upon them." *Id.* (citation and internal quotation marks omitted). And the MDL court rejected the plaintiffs' argument that they could withhold this information until discovery, "because 'such a factual averment [was] critical to the question of whether the plaintiffs' alleged injuries are in any way connected to the alleged failure to conform' or update the label." *Id.* (quoting *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 400 (6th Cir. 2013)).

Consistent with *Fosamax*, other courts have granted motions for a more definite statement where plaintiffs fail to allege the time frame of the alleged injury. *See, e.g.*, *Slinski v. CSX Transp.*, No. 07-CV-10270, 2007 WL 1377931, at *1 (E.D. Mich. May 8, 2007) (granting motion for more definite statement and ordering plaintiff to amend complaint to include time frame during which decedent was exposed, the types of exposure, and the type of alleged injury); *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1294–95 (N.D. Ga. 2005) (same); *Convenient Indus. of Am., Inc. v. CFM Franchising Co.*, No. 93 C 4028, 1993 WL 387363, at *2 (N.D. Ill. Sept. 24, 1993) (granting alternative motion for a more definite statement regarding date of injury because of "the possible assertion of a defense"); *cf. Chisholm*, 286 F. Supp. 2d at 738–39 (collecting cases) ("Significantly, courts have required that a plaintiff plead time when the events in question spanned a number of years and when the date plaintiff discovered his injury appeared to be remote in time."). These principles apply here, as the time period when Plaintiff was prescribed and ingested Dilantin is highly relevant to Defendants' ability to meaningfully respond to her allegations. *See also infra* Part IV.

\* \* \*

The Court should take judicial notice of Plaintiff's sworn statements and dismiss her Complaint because she cannot prove proximate cause as a matter of law. But, failing that, at the

12

very least the Court should require Plaintiff to plead her claims with the requisite particularity to give Defendants notice of her specific claims.

**II.     The Court should dismiss Plaintiff's conspiracy claim (Count IV) for failure to state a claim upon which relief could be granted—it is barred by the intracorporate-conspiracy doctrine.**

"The intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013); *see also ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) ("[U]nder the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation."). Conspiracy claims are subject to dismissal when it is apparent on the face of the complaint that all defendants were acting as agents, servants, or partners of each other. *See, e.g.*, *Painter's Mill Grille, LLC*, 716 F.3d at 353.

The face of Plaintiff's Complaint plainly implicates the intracorporate-conspiracy doctrine: Plaintiff alleges that "[a]t all times material, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and/or joint-venturer of each of the other Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture," as well as that "[t]here exists and, at all times herein mentioned, there existed a unity of interest in ownership between Defendants such that any individuality and separateness between Defendants ha[d] ceased and these Defendants are alter ego of each other and exerted control over each other." Doc. 1 ¶¶ 141, 143. As a result, Plaintiff has not alleged a valid civil conspiracy under Virginia law. *See, e.g.*, *Painter's Mill Grille, LLC*, 716 F.3d at 353 (dismissing conspiracy claim in complaint that "allege[d] that the individual defendants were acting at all times as 'agent[s], servant[s] and/or employee[s]' of the corporate

13

defendants" as barred by the intracorporate conspiracy doctrine). The Court should dismiss Plaintiff's Count IV.

### III. The Court should dismiss Plaintiff's fraud claim (Count I) for failure to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

"Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be specific enough to give defendants sufficient notice of the particular misconduct that is alleged to constitute fraud so that they can defend against the charge." *Zaremski v. Keystone Title Assocs., Inc.*, No. 88–2569, 1989 WL 100656, at *2 (4th Cir. Aug. 30, 1989). To satisfy Rule 9(b)'s heightened pleading requirements, a plaintiff must state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999) (quotation omitted). "[W]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Zaremski*, 1989 WL 100656, at *2 (quotation omitted). Thus, "[g]rouping multiple defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity." *Chistoni v. HSBC Bank USA, N.A.*, No. 1:17–cv–00315 (GBL/JFA), 2017 WL 1963902, at *5 (E.D. Va. May 11, 2017) (citing *Juntti v. Prudential-Bache Secs., Inc.*, No. 92–2066, 1993 WL 138523, at *2 (4th Cir. 1993)).

Plaintiff's fraud claim falls far short of Rule 9(b)'s requirements. It does not detail the specific statements that are allegedly false or fraudulent, identify the speaker, or state when or where the statements were made. Rather, it groups together all Defendants—multinational corporations—and merely lists a number of vague and conclusory allegations. *See* Doc. 1 ¶¶ 109–22. In addition to not differentiating between the various corporate defendants, the Complaint also does not identify *a single individual within those organizations* who made an allegedly fraudulent

14

statement. *Id.* And with respect to the "when" of the alleged fraud, the most specific times that Plaintiff alleges are simply *decades-long date ranges*, like "[f]rom 1993 through the present" and "[f]rom the 1960's through the present." *Id.* ¶ 112. The Complaint's fraud claim does not satisfy Rule 9; accordingly, the Court should dismiss Plaintiff's Count I. *See, e.g.*, *Chistoni*, 2017 WL 1963902, at *6 (dismissing fraud claims in a Complaint that "group[ed] the Defendants rather than assert[ing] allegations against each Defendant" individually).

**IV.     The Complaint should otherwise be dismissed in its entirety as an impermissible "shotgun pleading," or in the alternative, Plaintiff Crotts should be required to provide a more definite statement under Federal Rule of Civil Procedure 12(e).**

Separately, the Court should dismiss Plaintiff's Complaint because it is a "shotgun pleading" that does not satisfy Federal Rule of Civil Procedure 8(a)(2)'s requirement that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Negron-Bennett v. McCandless*, No. 1:13cv387 JCC/JFA, 2013 WL 3873659, at *4 (E.D. Va. July 24, 2013). Shotgun complaints are often both "prolix, repetitive, and overly complex," *Sewraz v. Guice*, No. 3:08cv35, 2008 WL 3926443, at *1 (E.D. Va. Aug. 26, 2008), and "at the same time deficient as to required factual allegations," *Negron-Bennett*, 2013 WL 3873659, at *4. Counts in shotgun pleadings generally "incorporate[] by reference the allegations of [their] predecessors" and "require the Court to engage in constant cross-referencing to locate relevant allegations." *Sewraz*, 2008 WL 3926443, at *1; *see also, e.g.*, *Negron-Bennett*, 2013 WL 3873659, at *4 ("Such pleading requires the Court to crossreference constantly the factual narrative section and wade indeterminately through the morass of superfluous detail." (internal quotation marks and citation omitted)). "The result is that the Complaint is replete with factual allegations that could not possibly be material to each specific count, and that any allegations that are material are buried beneath numerous pages of . . . irrelevancies." *Negron-Bennett*, 2013 WL

3873659, at *4.  Thus, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Id.*

Here, Plaintiff has filed a lengthy boilerplate complaint that describes at length facts that have no apparent connection to Plaintiff or her claims.  *See, e.g.*, Doc. 1 ¶¶ 30–45 (listing at-risk subpopulations, including the intellectually disabled, persons with preexisting brain injuries, poor metabolizers, pregnant women, and infants).  Indeed, *only one* of the Complaint's 145 paragraphs substantively relates to Plaintiff and her specific claims.  *See id.* ¶ 14.  And this vague paragraph fails to provide much, if any, meaningful detail into Plaintiff's individual claims—*e.g.*, when, specifically, Plaintiff began or stopped taking Dilantin/phenytoin, and when she began to experience her neurological symptoms or was diagnosed with cerebellar atrophy.  Moreover, each count of the Complaint summarily adopts the allegations of all preceding paragraphs (*see id.* ¶¶ 109, 123, 136, 140), making it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Negron-Bennett*, 2013 WL 3873659, at *4.  The Complaint also asserts fraud, but fails to assert the details of who, what, when, and how as Rule 9(b) specifically requires.  *See id.* ¶¶ 109–22.  The Court should dismiss the Complaint, which is a classic shotgun pleading, no matter its length.

In the alternative, the Court should require Plaintiff to provide a more definite statement of her claims.  Defendants cannot otherwise frame a meaningful answer.  For example, Plaintiff does not allege when she first experienced the onset of her neurological injuries or was diagnosed with cerebellar atrophy—this bears directly on the application of the statute of limitations.  Virginia has a 2-year statute of limitations on personal-injury claims, *see* VA. CODE ANN. § 8.01-243(A), "and the prescribed limitation period shall begin to run from the date the injury is sustained . . . and not when the resulting damage is discovered," *id.* § 8.01-230.  If Plaintiff Crotts sustained her alleged

injuries outside of the limitations period, her claim is untimely as a matter of law—regardless of when she discovered those injuries. Plaintiff should have to plead the basic facts that go to the threshold question whether she can even establish that her claims are timely, which is a condition precedent to bringing a claim.

The Court should dismiss Plaintiff's shotgun complaint or, at the least, require Plaintiff to file a more definite statement that provides Defendants with enough information to be able to understand the factual basis for her claims and frame a meaningful responsive pleading—including the duration of her Dilantin/phenytoin use and the date of the onset of her alleged injuries and her cerebellar atrophy diagnosis.

## CONCLUSION

All of Plaintiff's claims (Counts I–IV) are based on an allegedly inadequate warning and the Court should dismiss them with prejudice for failure to state a claim because Plaintiff cannot, as a matter of law, prove causation. Separately, the Court should dismiss Plaintiff's conspiracy claim (Count IV) for failure to state a claim as it is barred by the intracorporate-conspiracy doctrine, and Plaintiff's fraud claim (Count I) as it is not sufficiently particularized as required by Federal Rule of Civil Procedure 9(b). In any event, Plaintiff's Complaint is subject to dismissal in its entirety as an impermissible shotgun pleading; alternatively, the Court should require Plaintiff to file a more definite statement, under Federal Rule of Civil Procedure 12(e).

November 18, 2020								Respectfully submitted,

/s/ Tirzah S. Lollar
Tirzah S. Lollar (VA Bar # 68145)
*Attorney for Defendants*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Tel: 202.942.5000
Fax: 202.942.5999
E-mail: Tirzah.Lollar@arnoldporter.com


Jeffrey H. Horowitz
(*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Tel: 212.836.7572
Fax: 212.836.8689
Email: Jeffrey.Horowitz@arnoldporter.com


Sharon D. Mayo (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
10th Floor Three Embarcadero Center
San Francisco, California 94111-4024
Tel: 415.471.3296
Fax: 415.471.3400
E-mail: Sharon.Mayo@arnoldporter.com


Daniel Meyers (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4321
Tel: 312.583.2393
Fax: 312.583.2596
E-mail: Daniel.Meyers@arnoldporter.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 18, 2020, I caused the foregoing document to be electronically filed through the Court's CM/ECF system, which caused a notice of electronic filing and copy of the foregoing to be served on all counsel of record.

Respectfully submitted,

/s/ Tirzah S. Lollar
Tirzah S. Lollar (VA Bar # 68145)
*Attorney for Defendants*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C.  20001-3743
Telephone:  +1 202.942.5000
Facsimile:  +1 202.942.5999
E-mail: Tirzah.Lollar@arnoldporter.com